|   |   |
|---|---|
| UNITED STATES DISTRICT COURT | |
| DISTRICT OF NEVADA | |
| * * * | |

| | |
|---|---|
| AXIS SPINE NV, LLC, | Case No. 2:17-cv-02147-APG-VCF |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| XTANT MEDICAL HOLDINGS, INC., | |
| Defendant. | (ECF No. 10) |

Plaintiff Axis Spine NV, LLC sues defendant Xtant Medical Holdings, Inc. for breach of contract, breach of the covenant of good faith and fair dealing, and intentional interference with prospective economic advantage. According to Axis, the parties entered into a contractual relationship for Axis to distribute Xtant's medical devices. Axis alleges Xtant breached the agreement by failing to pay for Axis's services. Axis also alleges Xtant interfered with Axis's relationship with its own sales representatives, who are independent contractors, by failing to pay Axis under the contract.

Xtant moves to dismiss all claims arguing that the statute of frauds bars Axis's contract-based claims because Axis relies on an unsigned letter of intent. Xtant argues the intentional interference claim is barred by the economic loss doctrine or the gist of the action doctrine, and is inadequately pleaded because there is no allegation Xtant intended to interfere with the relationship or to harm Axis. I grant the motion, with leave to amend.

**I. BACKGROUND**

According to the amended complaint, from 2006 to 2015, Axis distributed medical devices for Xtant's predecessor, X-Spine Systems, Inc. ECF No. 6 at 2. In August 2015, X-Spine was acquired by Bacterin International Holdings, Inc. and renamed Xtant. *Id.*

In late 2015, Xtant representatives contacted Axis about expanding the relationship between the two companies. *Id.* at 3. The parties exchanged drafts of a letter of intent (LOI) from

late 2015 through April 2016. *Id.* On April 9, 2016, Xtant's chief executive officer, Daniel Goldberger, sent the final draft of the LOI to Axis and requested confirmation so he could submit it to Xtant's board of directors for approval. *Id.* Axis accepted the terms and continued to distribute Xtant's product. *Id.*

The LOI was for a three-year term and provided that Xtant would pay Axis $250,000 at signing, and $75,000 at each of the first and second anniversaries. *Id.* It also provided for stock options and for Axis to earn commissions to be calculated and paid monthly. *Id.* at 3-4.

Xtant's board conditioned approval of the LOI on Xtant conducting due diligence on Axis. *Id.* at 4. While Xtant was conducting due diligence, it paid the first commission payment on May 17, 2016. *Id.* During the summer of 2016, Xtant conducted an inventory count and hired an outside company to perform a financial audit of Axis. *Id.* Through that audit, Xtant gained access to internal Axis information, including information about Axis's sales representatives. *Id.* at 4-5. In October 2016, the parties reconfirmed their agreement via a final version of the LOI. *Id.* at 5.

Axis alleges that in reliance on the parties' agreement, it restructured its business to better handle Xtant's business. *Id.* According to Axis, it performed under the agreement, but Xtant experienced cash flow problems resulting in late payments. *Id.*

In March 2017, Xtant hired a new chief executive officer, Carl O'Connell. *Id.* O'Connell reaffirmed the parties' agreement the same month he was hired. *Id.* Xtant made a $50,000 payment on April 1, but Xtant still owed Axis a substantial balance. *Id.*

Xtant's restructuring officer, David Barker, subsequently contacted Axis about renegotiating the parties' contract. *Id.* At a June 21 meeting, Barker told Axis that Xtant would not agree to the LOI, would not issue the stock options, and would not pay the commission rates set forth in the LOI. *Id.* Since then, Xtant has not paid pursuant to the LOI's terms. *Id.* at 6. Axis alleges Xtant owes nearly $1 million in past due payments. *Id.* Axis also alleges that as a result of Xtant failing to pay what is owed under the LOI, Axis has not been able to fulfill its obligations to its own sales representatives, who are independent contractors. *Id.* Based on these allegations,

Axis asserts claims for breach of contract, breach of the covenant of good faith and fair dealing, and tortious interference with prospective economic advantage.

## II. ANALYSIS

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

Generally, I may not consider any material beyond the complaint when ruling on a Rule 12(b)(6) motion to dismiss without converting it to one for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); Fed. R. Civ. P. 12(d). However, I may consider a document that is not attached to the complaint if the document's "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on it. *Id.* (quotation omitted).

I will consider the LOI because Xtant attaches it to the motion to dismiss, Axis does not contest its authenticity and provides the same document with its opposition, and Axis's contract claims necessarily rely on it. ECF Nos. 10-1; 14-1 at 2-3. However, I will not consider the email chain that Axis attaches to its opposition. ECF No. 14-1 at 5-6. The email chain is not attached to the amended complaint and Axis's claims do not necessarily rely on it, as shown by the fact that the amended complaint makes no allegations about this particular email chain.

### A. Contract Claims

Xtant argues that because the LOI was for a three-year term, it is subject to Nevada's statute of frauds, which makes the agreement unenforceable unless it is in writing and signed by Xtant. Xtant contends the amended complaint does not allege the LOI was signed, and Xtant

attaches an unexecuted version of the LOI to its motion. ECF No. 10-1. Axis concedes the LOI was never signed and that it would be subject to the statute of frauds. ECF No. 14 at 7. But Axis argues it has pleaded facts showing part performance and a promise to reduce the agreement to writing. Axis thus contends Xtant should be estopped from asserting the statute of frauds as a defense. Xtant replies that the amended complaint's allegations of part performance are insufficient, there is no allegation of a promise to reduce the agreement to writing, and there is no claim asserted for promissory estoppel.

Axis's claims for breach of contract and breach of the covenant of good faith and fair dealing require the existence of a valid, enforceable contract. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013) (applying Nevada breach of contract law); *JPMorgan Chase Bank, N.A. v. KB Home*, 632 F. Supp. 2d 1013, 1023 (D. Nev. 2009) (same for breach of covenant of good faith and fair dealing). Under Nevada law, "every agreement that, by the terms, is not to be performed within 1 year from the making thereof" violates the statute of frauds "unless the agreement, or some note or memorandum thereof expressing the consideration, is in writing, and subscribed by the person charged therewith." Nev. Rev. Stat. § 111.220(1).

Because the LOI, by its terms, was a three-year contract, it must be in writing and signed by Xtant to be enforceable. The amended complaint alleges the LOI was finalized in writing, but Axis concedes that it was not signed by Xtant. Thus, Axis's contract claims cannot proceed unless some exception to the statute of frauds exists.

One exception is that the party asserting the statute of frauds should be estopped from raising the defense. *Zunino v. Paramore*, 435 P.2d 196, 197 (Nev. 1967). Under this theory, the party asserting estoppel "must be influenced by the acts or silence of the other and it must appear that the acts or conduct of the party estopped caused the party relying to act as he would not have acted . . . ." *Id.*; *see also Alpark Distrib., Inc. v. Poole*, 600 P.2d 229, 230-31 (Nev. 1979) (stating estoppel should apply "whenever unconscionable injury . . . would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract . . . ." (quotation omitted)). The estoppel theory is based on

the policy consideration that if one party "proceeds so far in the execution of a parol contract that he can have no adequate remedy unless the whole contract is specifically enforced, then equity requires such relief to be granted; because, if the rules were otherwise the statute, which is designed to prevent fraud, would itself become an instrument of fraud." *Schreiber v. Schreiber*, 663 P.2d 1189, 1190 (Nev. 1983) (quotation omitted).

This is consistent with the principle stated in the Restatement (Second) of Contracts § 139(1): "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise." "The reliance must be foreseeable by the promisor, and enforcement must be necessary to avoid injustice." *Id.* § 139 cmt. b. Factors to consider in determining whether enforcement is necessary to avoid injustice include "the availability and adequacy of other remedies;" the "definite and substantial character of the action or forbearance in relation to the remedy sought;" the "extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;" whether the actions taken in reliance were reasonable; and "the extent to which the action or forbearance was foreseeable by the promisor." *Id.* § 139(2). One form of estoppel that will preclude application of the statute of frauds under Nevada law is part performance combined with a promise to reduce the agreement to an executed writing. *Edwards Indus., Inc. v. DTE/BTE, Inc.*, 923 P.2d 569, 574 (Nev. 1996) (stating that where there is both a promise to execute a written agreement and part performance, "estoppel is properly invoked").

"Estoppel or part performance must be proved by some extraordinary measure or quantum of evidence." *Zunino*, 435 P.2d at 197. However, "the complaint need only sufficiently allege the existence of an exception." *Capital Mortg. Holding v. Hahn*, 705 P.2d 126, 127 (Nev. 1985).

The amended complaint does not sufficiently allege facts supporting an estoppel theory. A vague allegation that Axis restructured its business to better serve Xtant, standing alone, does

not sufficiently allege a basis for estoppel under these circumstances. Additionally, the amended complaint alleges part performance by both Axis and Xtant, but it does not allege a promise to reduce the agreement to an executed contract. Although Axis alleges Xtant periodically orally reaffirmed the contract, there is no allegation that as part of these assurances, Xtant agreed to execute the LOI.

I therefore dismiss the contract-based claims. However, because it is possible these deficiencies could be cured by amendment, I dismiss the claims without prejudice and grant Axis leave to amend. *See* Fed. R. Civ. P. 15.

**B. Tortious Interference**

Xtant argues the tortious interference claim fails because it is barred by the economic loss doctrine or the gist of the action doctrine. Xtant also contends the amended complaint fails to allege a future economic relationship, instead relying on an existing relationship between Axis and its sales representatives. Finally, Xtant argues the amended complaint fails to allege Xtant acted with the intent to interfere with the relationship or to harm Axis.

Axis responds that because this claim is an intentional tort, the economic loss and the gist of the action doctrines do not apply. Axis also argues Nevada has not recognized the gist of the action doctrine. Finally, Axis asserts it has adequately pleaded intent.

Under Nevada law, the "economic loss doctrine is a rule of judicial creation" that "marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby [generally] encourages citizens to avoid causing physical harm to others." *Davis v. Beling*, 278 P.3d 501, 514 (Nev. 2012) (quotation omitted). Under the economic loss doctrine "there can be no recovery in tort for purely economic losses." *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000) (quotation omitted).[1] Purely economic loss means "the loss of the benefit of the user's bargain . . . including . . . pecuniary damage for inadequate value, the cost of repair and

---

[1] *Calloway* was superseded in part by statute in relation to construction defect negligence claims brought under Nevada Revised Statutes Chapter 40. *See Olson v. Richard*, 89 P.3d 31, 33 (Nev. 2004).

replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property." *Id.* (quotation omitted).

The essence of the doctrine is that "economic interests are protected, if at all, by contract principles, rather than tort principles," whereas "tort law is designed to secure the protection of all citizens from the danger of physical harm to their persons or to their property and seeks to enforce standards of conduct" society imposes "without regard to any agreement." *Id.* at 1265 (emphasis and quotation omitted). The doctrine thus "serves to distinguish between tort, or duty-based recovery, and contract, or promise-based recovery, and clarifies that economic losses cannot be recovered under a tort theory." *Id.* at 1264.

The economic loss doctrine does not bar the recovery of purely economic losses "when the defendant intentionally breaches a duty that is imposed independently of the obligations arising from contract." *Davis*, 278 P.3d at 514. To determine whether a claim sounds in tort or in contract I consider "whether the actions or omissions complained of constitute a violation of duties imposed by law, or of duties arising by virtue of the alleged express agreement between the parties." *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) (quotation omitted).

The amended complaint alleges that "[a]s a result of Xtant's failure to timely tender payments due and owing under the parties' agreement, Axis has been unable to fulfill its obligations to its sales reps who act as independent contractors." ECF No. 6 at 6; *see also id.* at 9 (alleging Xtant interfered with Axis's relationship with its sales representatives "when it breached the parties' agreement," and Xtant's actions were not justified because Xtant "had a contractual obligation to make payments under the parties' agreement but failed to do so"). The amended complaint thus alleges only a breach of duties imposed by the parties' contract. As currently pleaded, this claim is barred by the economic loss doctrine because it alleges only purely economic losses as a result of being denied a benefit of the parties' alleged contractual bargain. Neither the amended complaint nor Axis's opposition identifies a duty imposed by law that Xtant breached. Nor does the amended complaint allege an intentional tortious activity. However, as

with Axis's other claims, I deny the claim without prejudice because it is possible this claim could be cured through amendment, if sufficient facts exist to properly plead this claim.

### III. CONCLUSION

IT IS THEREFORE ORDERED that defendant Xtant Medical Holdings, Inc.'s motion to dismiss **(ECF No. 10) is GRANTED**. All claims in plaintiff Axis Spine NV, LLC's amended complaint (ECF No. 6) are dismissed without prejudice.

IT IS FURTHER ORDERED that plaintiff Axis Spine NV, LLC may file an amended complaint on or before May 7, 2018. Amendment is not limited to the claims specifically pleaded in the amended complaint if alternative theories with sufficient factual support are alleged.

DATED this 16th day of April, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE