# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| AXIS SPINE NV, LLC, | Case No.: 2:17-cv-02147-APG-VCF |
| Plaintiff | **Order Denying Motion to Dismiss as Moot and Granting in Part Motion for Summary Judgment** |
| v. | |
| XTANT MEDICAL HOLDINGS, INC., | [ECF Nos. 40, 47] |
| Defendant | |

Plaintiff Axis Spine NV, LLC sues defendant Xtant Medical Holdings, Inc. for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. According to Axis, the parties entered into a contract for Axis to sell Xtant's products on consignment for commissions, for Xtant to buy Axis's inventory, and for Axis to obtain stock options as part of the deal. Axis alleges Xtant breached the agreement by failing to pay all agreed amounts. Alternatively, Axis alleges that if the contract was never executed, then Xtant has been unjustly enriched.

Xtant previously moved to dismiss, which I granted with leave for Axis to amend. ECF No. 37. After Axis filed its amended complaint (ECF No. 38), Xtant again moved to dismiss and later moved for summary judgment. ECF Nos. 40, 47. Axis opposes both motions.

I deny Xtant's motion to dismiss as moot because the issues can be resolved on a more fulsome record at summary judgment. I grant Xtant's motion for summary judgment on the contractual claims because no genuine dispute remains that the parties never had a meeting of the minds on all material terms under the letter of intent. I deny Xtant's motion on the unjust enrichment claim because a reasonable jury could find the parties acted as if they had entered into separate contracts for regular commissions, performance incentives, and an asset purchase.

## I. ANALYSIS

Axis distributed medical devices for Xtant under a resale arrangement where Axis would buy Xtant's products and resell them to hospitals and physicians. ECF Nos. 48-2 at 9-10; 53-3 at 3; 53-4 at 1-2, 5. In late 2015, Xtant representatives contacted Axis about changing the relationship between the two companies and moving Axis to a consignment business model. ECF Nos. 53-2 at 19; 53-4 at 3. Xtant wanted to change the dynamic so it could realize on its own financial statements all of the revenue Axis was earning, even if the profit for Xtant would remain the same. ECF Nos. 48-2 at 28-29; 53-3 at 3; 53-4 at 3-4, 5-6. Xtant's management deemed it more important to show investors increased revenue rather than increased profits. ECF No. 53-4 at 5-6.

In early 2016, the parties began exchanging drafts of a letter of intent (LOI) to bring about this new arrangement. ECF Nos. 48-3, 53-5. In March 2016, Axis began selling a few items on consignment and began doing so consistently starting April 1, 2016, even though the parties had not yet executed a contract. ECF No. 53-2 at 19.

On April 9, 2016, Xtant's chief executive officer, Daniel Goldberger, sent a draft of the LOI to Axis and requested confirmation of its terms so he could submit it to Xtant's board of directors for approval. ECF No. 48-9. The LOI, which was marked as "non binding, for discussion only," proposed a three-year term and provided that Xtant would pay Axis $250,000 at signing and $75,000 at each of the first and second anniversaries of signing. *Id.* It also provided for stock options but did not identify a strike price.[1] *Id.* The draft LOI set forth a

---

[1] A stock option is "the right to purchase a share of stock from a company at a fixed price, referred to as the 'strike price,' on or after a specified vesting date." *United States v. Reyes*, 577 F.3d 1069, 1073 (9th Cir. 2009). "In general, companies grant options with a strike price equal to the market price on the date the options are granted." *Id.*

2

commission schedule of 50% of all revenue, with increasing commission percentages up to 75% if certain revenue objectives were met. *Id.* Finally, Axis would provide a list of inventory valued at approximately $850,000 that Axis would turn over to Xtant. *Id.* Axis confirmed its agreement to the terms that same day. ECF No. 53-14 at 1.

Xtant's board approved the LOI's general structure and authorized Goldberger to work with the legal and accounting departments to complete the deal. ECF No. 53-3 at 22-23. The board conditioned final approval on Xtant conducting due diligence, including performing an inventory of the assets to be purchased and ensuring that Axis was not a surgeon-owned business. ECF Nos. 48-5 at 18; 53-2 at 14-17.

In the meantime, Goldberger came up with an interim plan that called for the parties to enter into three separate agreements until the LOI could be finalized. ECF Nos. 48-4 at 16; 53-3 at 12-13. Those three agreements would be for base commissions at a rate of 50%, an incentive contract for another 25% in commissions if revenues exceeded a certain amount, and an asset purchase agreement. ECF No. 53-3 at 12-13.

In May 2016, Axis and Xtant executed a temporary usage agreement (TUA) that provided for Xtant to pay Axis a 50% commission rate. ECF No. 53-8. Goldberger testified that Xtant entered this agreement so it could immediately start realizing Axis's revenues on its own financial statements. ECF No. 56-1 at 7.

Although the other two agreements were not signed, the parties acted in many ways as if they had been. ECF No. 48-2 at 16. For example, Xtant paid the extra 25% in commissions. ECF Nos. 48-2 at 20, 59, 65; 53-3 at 14, 28; 53-10; 53-13; 53-14; 53-16. The parties also acted in some ways as if Xtant had already purchased Axis's inventory and Xtant made an initial $125,000 payment. ECF Nos. 53-2 at 2-3, 7; 53-3 at 28; 53-7; 53-9. However, the performance

3

incentive and asset purchase agreements were never signed. ECF No. 48-2 at 66.  The parties continued to make changes to the LOI through October 2016, but it too was never signed. ECF Nos. 48-2 at 15; 48-11 at 4; 53-15.

 In March 2017, Xtant's new chief executive officer, Carl O'Connell, told Axis that Xtant intended to honor the deal but was still working on drafting a final agreement. ECF No. 53-12.  O'Connell authorized Xtant to make a $50,000 payment to Axis as a show of good faith. *Id.*  However, in June 2017, Xtant's restructuring officer, David Barker, told Axis that Xtant would not agree to the LOI, would not issue the stock options, and would not pay the commission rates set forth in the LOI. ECF No. 53-2 at 12-13.  In August 2017, Xtant terminated the TUA. ECF No. 48-19.

Axis asserts claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment.  Xtant moves for summary judgment.

**II.  ANALYSIS**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531

(9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**A. Contract-Based Claims**

Xtant argues that the contract-based claims fail because no contract was formed through the LOI where the parties did not execute the contract, continued to negotiate, and never reached a meeting of the minds on material terms. Xtant also contends the LOI is unenforceable under the statute of frauds because Xtant never signed it and no exception to the statute applies. Finally, Xtant argues that even if there is a contract, Axis breached it first, thereby excusing Xtant's performance.

Axis responds that the parties finalized the LOI in April 2016 and began acting according to its terms. Axis also argues that it has shown an exception to the statute of frauds by part performance combined with Xtant's promises to reduce the agreement to a finalized contract. Axis asserts the LOI's terms are sufficiently definite and the parties performed according to those terms. Axis denies that it breached first and contends Xtant's own unclean hands bar it from denying the contract's enforceability.

Axis's claims for breach of contract and breach of the covenant of good faith and fair dealing require the existence of an enforceable contract. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013) (applying Nevada breach of contract law); *JPMorgan Chase Bank, N.A. v. KB Home*, 632 F. Supp. 2d 1013, 1023 (D. Nev. 2009) (same for breach of covenant of good faith and fair dealing). "Basic contract principles require, for an enforceable

contract, an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). "[P]reliminary negotiations do not constitute a binding contract unless the parties have agreed to all material terms." *Id.* "A valid contract cannot exist when material terms are lacking or are insufficiently certain and definite." *Id.* "A contract can be formed, however, when the parties have agreed to the material terms, even though the contract's exact language is not finalized until later." *Id.* Price and payment are material terms. *Matter of Estate of Kern*, 823 P.2d 275, 277 (Nev. 1991). Whether a contract was formed is a fact question. *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 255 (Nev. 2012).

Although contract formation generally is a question of fact, there can be no genuine dispute in this case that the LOI is not a binding contract because the parties never agreed to a material term. The LOI provides that Xtant was to grant stock options, but key aspects of those options were never defined. As Axis's owner admitted at his deposition, the parties never agreed on the type of shares Axis would receive, the grant date, the vesting date, or the strike price. ECF No. 48-2 at 14, 22-23, 30-31. I therefore grant Xtant's motion for summary judgment on these claims.

**B. Unjust Enrichment**

Xtant argues this claim fails because the TUA is an express contract covering the parties' relationship, and an unjust enrichment claim is not available if a contract exists. Xtant also argues that even if unjust enrichment could apply, there is no inequity because Axis received over $3 million in commissions and the commission rate was higher than what Xtant paid other distributors. Axis responds that if there is no enforceable contract, then it is entitled to resort to equity because it detrimentally relied on Xtant's part performance and numerous representations

that it would honor the LOI's terms.  Axis contends that simply because it was paid a lot of money does not mean it was equitably compensated.

Under Nevada law, unjust enrichment "exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Certified Fire Prot. Inc.*, 283 P.3d at 257 (quotation omitted).  A benefit in this context "can include services beneficial to or at the request of the other, denotes any form of advantage, and is not confined to retention of money or property." *Id.* (quotation omitted).  A claim for unjust enrichment "is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997).

Genuine disputes remain on this claim.  Although the TUA is an express contract, a reasonable jury could find that it covered only base commissions and the parties contemplated two other contracts that were never formally executed.  The TUA does not contain a clause stating that it is the entire agreement between the parties. ECF No. 48-21.  Goldberger testified that the parties intended to have three agreements, that he agreed with Axis's characterization of the parties' understanding that Axis was entitled to another 25% in commissions if it hit revenue goals, and that Axis was entitled to payment for inventory.  There is evidence that Xtant performed consistent with these understandings, including paying the 25% commission and paying an initial $125,000 for inventory.  A reasonable jury could conclude Xtant did not do this out of the goodness of its heart but because the TUA did not cover these subjects.

Additionally, a reasonable jury could find Axis conferred a benefit on Xtant and it would be unjust for Xtant to retain it without paying for the value of that benefit. Goldberger testified that Xtant "received the benefit of the bargain" and got "the economic benefits." ECF No. 48-4. The fact that Xtant paid Axis over $3 million does not end the matter because a reasonable jury could find the value of the benefits conferred was greater than what Xtant paid and that it would be unjust for Xtant to retain those benefits without paying Axis more. The course of the parties' negotiations and evidence of Axis's profit margin prior to converting to the consignment model could lead a jury to conclude the value of the benefits conferred exceeded $3 million.

### C. Rule 56(d)

Axis requests relief under Rule 56(d). I deny that request because Axis has not established by affidavit "the specific facts it hopes to elicit from further discovery," that "the facts sought exist," or that those facts "are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

## III. CONCLUSION

IT IS THEREFORE ORDERED that defendant Xtant Medical Holdings, Inc.'s motion to dismiss **(ECF No. 40) is DENIED as moot**.

IT IS FURTHER ORDERED that defendant Xtant Medical Holdings, Inc.'s motion for summary judgment **(ECF No. 47) is GRANTED in part**. Defendant Xtant Medical Holdings, Inc. is entitled to judgment as a matter of law on plaintiff Axis Spine NV, LLC's claims for breach of contract and breach of the covenant of good faith and fair dealing. The motion is denied as to plaintiff Axis Spine NV, LLC's unjust enrichment claim.

DATED this 6th day of March, 2019.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE